CHATARD<br>*v.*<br>NEW ORLEANS.

Judgment affirmed, with costs.

---

### J. CORNING & Co *v.* JOHN H. ELLIOTT et als.

Plaintiffs were holders of two drafts accepted by *Lowe & Pattison*, who enjoined plaintiffs from selling the acceptances. The injunction was dissolved, and plaintiffs sought to make the sureties on the injunction bonds liable. It was in evidence, that the plaintiffs instituted suit upon the drafts and recovered judgment for the amount thereof, against *Lowe & Pattison*. One of the parties, *W. H. Pattison*, made a cession of his property to his creditors, on January 5th, 1853. It was proved that at the time of the issuing of the injunction a sale of the paper held by the plaintiffs might have been made and would have been made at a discount of 2½ per cent. per month if the injunction had not restrained the sale of it. *Held:* That the amount recoverable upon the obligation less the discount of 2½ per month, is the sum of which the plaintiffs have been deprived by the issuing of this injunction.

There was no evidence to show that the other parties were insolvent, or that the drafts have become worthless in consequence of the injunction. *Held:* That as the obligation in this case does not arise from a quasi offence, it is clear that in the assessment of damages, the law leaves no discretion to the Judge, who must be governed by the rules laid down in the Civil Code. Art. 1928. VOORHIES, J., with whom concurred BUCHANAN, J., dissenting.

The Act of 1831, authorizes the Court, upon the dissolution of injunctions to condemn the plaintiffs and surety jointly and severally to pay 10 per cent. interest on the amount of the judgment enjoined, and not more than 20 per cent. as damages, unless damages to a greater amount be proved. *Held:* It is true this applies to cases where judgments are enjoined, but it can hardly be contended that other cases are entitled to be placed on a more favorable footing, and I am unable, to conceive with the Judge *a quo*, that the sureties on the injunction bonds, should be held liable for the amount of the drafts, as the measure of damages. VOORHIES, J., with whom concurred BUCHANAN, J., dissenting.

Judicial sureties cannot (except in cases specially provided for) claim the benefit of a discussion of the principal debtor, before recourse is had against them. C. C. 3033, 3035; 2 An. 880.

A party is entitled to be placed in the condition in which he would have been, had no injunction been issued.

APPEAL from the Second District Court of New Orleans, *Lea*, J.
*Benjamin, Bradford & Finney*, for plaintiffs. *Goold & Stansbury*, and *Moïse & W. M. Randolph*, for defendants and appellants.

The following reasons for his judgment were given by

LEA, J. The plaintiffs were holders of two drafts of exchange, accepted by *Lowe & Pattison*, of this city, one drawn by *H. H. Nunnally & Co.*, to the order of and endorsed by *A. Pattison* for $3,500, dated at Yazoo City, Mississippi, on the 20th December, 1850, and payable twelve months after date, and the other drawn by *James E. Woods*, to the order of and endorsed by *France A. Woods*, for $4,500, dated at Brulé Larding, parish of West Baton Rouge, on the 24th February, 1851, payable twelve months after date. The plaintiffs had made an arrangement for the sale of these drafts at the rate of 2⅓ per cent. discount, per month, when, on or about the 4th of November, 1851, the acceptors, *Lowe & Pattison*, applied for and obtained an injunction restraining the plaintiffs from selling or negotiating said drafts, thereby preventing the sale of them as above stated. The injunction suit was prosecuted in due course of law, and after trial had, the injunction was dissolved. In the meantime, however, the acceptors failed, and one of the firm, *W. H. Pattison*, made a surrender of his property under the insolvent laws. This suit is brought by the holders of the drafts above mentioned, against the sureties on the injunction bond, to recover the amount of the two bills of exchange, the

holders tendering to the defendant on such payment being made, a subrogation of all the petitioners' rights in and to said bills. The defendants sever in their answers, but substantially adopt the same defence; i. e. they deny that the plaintiffs have exhausted their recourse or remedies against the other parties to the drafts, or that they have shown their inability to realize their debt out of the property of the drawers and endorsers; they deny the validity of the judgment dissolving the injunction, and aver that it was void for want of proper parties; they further deny that *Lowe & Pattison* were in good credit at the time of the issuing of the injunction, or that the paper could have been sold as represented; they deny that the injunction was wrongfully issued.

I consider it sufficiently proved that at the time of the issuing of the injunction, a sale of the paper held by the plaintiff might have been made and would have been made at a discount of 2½ per cent. per month, if the injunction had not restrained the sale of it. The amount recoverable upon the obligation less the discount of 2½ per month is the sum of which the plaintiffs have been deprived by the issuing of the injunction.

The plea of discussion may be disposed of by observing that the defendants are judicial sureties, and as such cannot (except in cases specially provided for) claim the benefit of a discussion of the property of the principal debtor before recourse is had against them. See C. C. 3033, 3035; see also 2 An. 830. If the injunction issued wrongfully, it was incumbent upon the defendants to establish the fact, it being a matter of defence. As respects the validity of the judgment, it is not pretended that it was not obtained contradictorily with at least one of the parties bound *in solido*, and as such would be binding on the sureties. In the case of *Henrick* v. *Conant*, 4th An., 276, no judgment was obtained against the solvent partner, and it was held that no confession of judgment made by an insolvent after a cession of his property could affect the property ceded, and as the sequestration bond was for the restoration of the articles sequestered, the surety was held not liable. I do not perceive the applicability of such a decision to the case at bar.

The only real question to be determined is, what is the proper measure of damages? The case of *Segond* v. *Ramy*, 3d An. 126, has reference merely to the construction of the Act of 1831, concerning injunctions. Moreover, there was no evidence that the plaintiff suffered any loss by the insolvency of the judgment debtor; had it been proved that the judgment debtor had absconded or left the State, or become insolvent, the judgment might have been different. In *Hutchinson's* case, 3d An. 548, no question was presented having reference to the depreciation of the notes withheld; the court considered the damages excessive and illegal; but in that case the plaintiff claimed the notes together with damages, incident to their detention; indeed, the court may be considered as intimating that had the jury not awarded the return of the notes to the plaintiff, the verdict would not have been disturbed.

In the case at bar, the plaintiff's right of property in the notes, was interfered with by the plaintiff in the injunction suit at a time when they might have realized a certain amount of money for them. The acceptors having since become insolvent, the plaintiffs are now told that the other parties to the notes not resident within the jurisdiction of the court are good and solvent; some of these parties reside out of the State, some within the State but out of the jurisdiction of this court. It is the opinion of one of the witnesses, *W. H. Pattison*, that the other parties to these notes are solvent. To this, it may be urged that the solvency or insolvency of persons residing abroad, is, as a general rule, altogether conjectural. Certainly no evidence has been introduced which would, in my opinion, justify the assurance that the plaintiffs, if left exclusively to their recourse against the other parties to the bills, would ever receive even a part of their debt. Be this as it may, the offer made by the plaintiffs is altogether equitable: if the bills are good, take them; and if not, do not throw upon us the additional trouble and expense of useless litigation. I do not wish to be understood as deciding that every interference with the right of property can be treated as a conversion, but certainly there are cases where the court is without any other means of arriving at a just estimate of damages than by considering the wrong complained of, as such. The plaintiffs are entitled to be placed in the condition in which they would have been, had no injunction been issued. It is not certain that they will ever collect a dollar upon the obligations now in their hand. It would, however, be unjust to allow the plaintiff to receive the price which they would have obtained for the

bills and to retain them also. The only means of doing justice between the parties is to give the plaintiffs the value of the notes at the time of the issuing of the injunction, and to subrogate the defendants to the plaintiffs' right therein upon paying the value. The plaintiffs' counsel contends that the measure of this value is the amount expressed upon their face. It is hardly consistent with their own offer to sell them at 2½ per cent. discount per month. In the case of the *Draining Company* v. *Lizardi*, 2d An., there was an actual conversion, the court considering that but for the conversion, the bond might have been made available for their actual value. In the case of *Just* v. *Wright*, 8th Rob., the plaintiff was prevented from collecting his debt, having attached property sufficient to pay it. In the case at bar, the acceptors became insolvent before the maturity of one of the notes, and it is questionable whether in the ordinary course of their business, they could have paid either of them. The evidence in this case furnishes a fixed and certain measure of damages, and I do not consider that the liability of the sureties should be extended so as to make them the guarantors of the solvency of the parties to the drafts.

MERRICK, C. J. This opinion, prepared by Chief Justice *Slidell*, before the adjournment of the court in June last, is now adopted as the opinion of the majority of the court.

SLIDELL, C. J. The reasons given by the learned Judge of the District Court amply supports the judgment rendered. As no amendment of the judgment has been asked by the appellees, it is unnecessary to enquire whether the Court below might not have gone farther, as claimed in argument by the appellees, and taken the face of the bills as the measure of damages.

Judgment affirmed with costs.

VOORHIES, J. (Dissenting.) The obligation of the defendants is that of suretyship, " to secure the payment of such damages as may have been sustained in case it should be decided that the injunction had been wrongfully obtained " by *Lowe & Pattison*. C. P. 304. It appears that the plaintiffs were holders of two drafts, accepted by *Lowe & Pattison*, one drawn by *H. A. Nunnally & Co.*, to the order of and endorsed by *A. Pattison, Jr.*, for $3,500, dated 20th Dec. 1850, and payable twelve months after date, and the other drawn by *James E. Woods*, to the order of and endorsed by *Frances A. Woods*, for $4,500, dated West Baton Rouge, 24th February, 1851, and payable twelve months after date ; this draft appears to have been secured by mortgage. The drawers of the other draft resided out of the State. *Lowe & Pattison* sued out an injunction against the plaintiffs, alleging that the latter had obtained these drafts from *W. B. Partee & Co.*, who were insolvent, for the purpose of giving them an undue preference over the other creditors, and that they were themselves creditors to a large amount? The injunction was dissolved, and the plaintiffs now seek to make the sureties on the injunction bonds liable.

The Act of 1831, authorizes the court, upon the dissolution of injunctions, to condemn the plaintiff and surety jointly and severally, to pay ten per cent. interest on the amount of the judgment enjoined, and not more than twenty per cent. as damages, unless damages to a greater amount be proved. 3 An. 127. It is true that this applies to cases where judgments are enjoined, but it can hardly be contended that the other cases are entitled to be placed on a more favorable footing. I am unable to concur with the Judge *a quo*, that the sureties in the injunction bonds should be held liable for the amount of the drafts, as the measure of damages. It is in evidence that the plaintiffs instituted suit upon the drafts, and recovered judgment for the amount thereof against *Lowe & Pattison*. One of the parties, *W. H. Pattison*, made a cession of his property to

CORNING
v.
ELLIOTT.

his creditors, on the 5th of January, 1853. There is no evidence before us which shows that the other parties are insolvent, or that the drafts have become worthless, in consequence of the injunction. In the case of *Hutchinson* v. *Sparks*, 3 An. 648, the court held, that "withholding from the defendant the evidences of debt upon which he desired to raise money, should not induce a more rigorous measure of damages than withholding a like sum of money; and in such a case, the measure of damages would be interest." C. C, 1928, 1929. On the hypothesis that the solvency of the drawers and endorsers to the drafts stood unaffected by the injunction, it would be difficult to draw any distinction, in principle, between the present and that case. There *Sparks* had actual possession of the notes, which he withheld from *Hutchinson*, who was, thereby, prevented from raising money to prosecute his business successfully. Here it is complained that the plaintiffs had made an arrangement for the sale of the drafts, at the rate of $2\frac{1}{2}$ per cent. discount per month, when they were prevented from effecting the same in consequence of the injunction, and in the meantime, the acceptors failed, and one of them, *W. H. Pattison*, made a surrender of his property under the insolvent laws. As the obligation, in this case, does not arise from a quasi-offence, it is clear that in the assessment of damages, the law leaves no discretion to the Judge, who must be governed by the rules laid down in the Civil Code, Art. 1928.

I am, therefore, of opinion that there should be a judgment of non-suit against the plaintiffs with costs in both courts.

Mr. Justice BUCHANAN, concurring.